# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 13-643V
### (to be published)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | |
|                                            * | Special Master Corcoran |
| BARRY S. DEZERN,                       * | |
|                                            * | Filed: October 14, 2016 |
|                 Petitioner,     * | |
|                                            * | Attorney's Fees and Costs; |
| v.                   * | Influenza ("Flu") Vaccine; |
|                                            * | Reconsideration; Local versus |
| SECRETARY OF HEALTH          * | Forum Hourly Rates |
| AND HUMAN SERVICES,          * | |
|                                            * | |
|                 Respondent.    * | |
|                                            * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | |

*F. John Caldwell, Jr.*, Maglio, Christopher & Toale, Sarasota, FL, for Petitioner.

*Claudia B. Gangi*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION ON RECONSIDERATION AWARDING ATTORNEY'S FEES AND COSTS IN PART[1]

On September 4, 2013, Barry S. Dezern filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program"),[2] based upon allegations that he developed Guillain–Barré syndrome ("GBS") and/or Chronic Demyelinating Inflammatory Polyneuropathy ("CIDP") as a result of his November 22, 2010, receipt of the influenza ("flu") vaccine. The parties stipulated to damages, and I issued a decision awarding them on January 21, 2016 (ECF No. 43).

On June 16, 2016, Petitioner filed a Motion requesting an award of attorney's fees and costs in the total amount of $53,982.95. ECF No. 48. Respondent did not oppose the request in substance,

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)).

but suggested that the total amount sought was too high, leaving it to my discretion to determine the proper sum to be awarded.

I issued a decision awarding $48,523.55 in total fees and costs on August 18, 2016. *See* Decision on Attorney's Fees and Costs (the "First Decision") (ECF No. 50). Thereafter, Petitioner requested reconsideration, arguing that the rate I awarded the primary attorney in this case for work performed in 2016 was too low, and also questioning some of the time reductions in my decision. I agreed to reconsider my decision in light of Petitioner's arguments. Now, having reviewed the matter a second time, I deny in part and grant in part Petitioner's motion, awarding **$48,594.95** in fees and costs – a small upward adjustment that is the product of a change from my earlier decision as to the proper rate for 2016.

## FACTUAL BACKGROUND

As noted above, Mr. Dezern alleged that he developed a peripheral neuropathy after receipt of the flu vaccine in November 2010. The primary attorney to have worked on the case is John Caldwell of the Sarasota, Florida, office of the law firm of Maglio, Christopher & Toale (the "Maglio Firm")[3], and the billing invoices filed in connection with the present fee request reveal the work he performed on the matter. *See generally* Pet.r's Ex. 33 (billing invoices), filed as ECF No. 48-1, at 1-16.

My first decision sets forth a brief recitation of the case's history, along with the tasks performed by Maglio Firm attorneys and paralegals at various stages. *See* First Decision. In essence, the case existed from August 2011 (when it was first brought to the Maglio Firm) until January 2016, when it was settled by stipulation. Approximately six months later, in June 2016, Petitioner filed his fees and costs request.

The hourly rate requested in the fees request was consistent for all years of work performed in the case except 2016 – at which time the Maglio Firm raised its Vaccine Program rates for all attorneys, including Mr. Caldwell, whose requested rate went from $300 per hour to $356 per hour. A declaration attached to the original fees request from the Maglio Firm's managing partner, Altom Maglio, Esq. (Ex. 35, filed as ECF No. 48-3) explained that the Maglio Firm took this step in response to a 2015 decision regarding proper rates for "in forum" practitioners, *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015); Pet.r's Ex. 35 at 2.

After the parties had fully briefed the fees request, I issued the First Decision, awarding the

---

[3] The billing invoices reveal that one other attorney, identified as "AMM" (most likely Altom Maglio) performed .2 hours of work on the case in September 2011, but did nothing thereafter. Ex. 33, filed as ECF No. 48-1, at 1.

Maglio Firm the total sum of $48,523.55. I awarded $40,114.00 in fees (for Mr. Caldwell and Dr. Steinman) – a difference of $5,111.40 from what Petitioner originally requested. *See* First Decision. I made two principal kinds of adjustments to the award requested. First, I determined that, based on prior decisions, the Maglio Firm was not entitled to forum rates set by *McCulloch*, and therefore declined to award Mr. Caldwell $356 per hour for 2016, choosing instead to adjust his $300 rate up to $335 for 2016. *Id*. Second, I eliminated 15.55 hours of time from the award after careful review of the bill, and after determining that in some few instances, unnecessary time was expended (for example, in preparation of the two-page petition, or Mr. Caldwell's assisting his expert in preparation of the expert report). *Id.*

On September 8, 2016, Petitioner requested reconsideration of the First Decision. *See* Motion for Reconsideration, dated September 8, 2016 (ECF No. 51)("Mot."). As general justification for reconsideration, Petitioner asserted that the First Decision was based on minimal evidence submitted by Petitioner, depriving him an opportunity to justify the 2016 rates. *Id.* at 1. Substantively, however, Petitioner offered two specific objections to my decision. First, Petitioner asserted that the Maglio Firm should in fact not be considered out-of-forum, and therefore not subject to the exception set out in *Davis City Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999), allowing them to be awarded rates consistent with *McCulloch*. Mot. at 6-8. In support of this argument, Petitioner offered nine declarations or affidavits from a variety of Sarasota-region practitioners, plus a Florida state court fee award consistent with the other evidence, intended to support the claim that the local billing rates are not significantly different enough from the forum rate. *See* Pet.r's Ex. 37 to Mot. (filed as ECF No. 51).

Second, Petitioner objects to my reduction of 8.6 hours from time he spent collaborating with Dr. Steinman in preparation of his expert report, arguing that it was a reasonable and efficient use of resources. Mot. at 7. Moreover, Petitioner states that he performed the "factual legwork" on the medical records to reduce the amount of hours that the expert would bill, at a higher rate, for the same work. *Id*. at 7-8. Petitioner emphasizes the importance of attorney oversight in the review and preparation of the expert report, especially as it concerns the medical literature and medical records. *Id*. at 8.

After receiving the motion, I determined that reconsideration was in the interests of justice. *R.K. v. Sec'y of Health & Human Servs.*, No. 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of decision dismissing case for failure to prosecute). I therefore withdrew my earlier decision pursuant to Vaccine Rule 10(e)(3)(A), and also ordered Respondent to file a response in reaction to the Petitioner's Motion. Respondent did so on September 28, 2016 (ECF No. 54), stating that in her view my original decision was not only within the bounds of my discretion but correct and therefore should stand. She did not, however, offer any specific comment on Petitioner's objections on reconsideration.

Petitioner filed a reply on October 11, 2016 (ECF No. 55), citing two recently-decided cases where the Maglio Firm was awarded $356 per hour. In the first instance, Chief Special Master Dorsey determined that the fees requested were reasonable without resolving whether the Maglio Firm is entitled to forum rates. *Bray v. Sec'y of Health & Human Servs.,* No. 10-207V, slip op. (Fed. Cl. Spec. Mstr. Aug. 23, 2016). The second case relied on Respondent's concurrence in it that the amount sought by the Maglio Firm was not an unreasonable amount. *Phillips-Deloatch v. Sec'y of Health & Human Servs.*, No. 09-171V, slip op. (Fed. Cl. Spec. Mstr. Sep. 26, 2016).

## ANALYSIS

I. **Background on *Avera* and Prior Treatment of *Davis* Exception.**

I have previously discussed at length in other decisions the legal standards applicable to a request for attorney's fees in a Program case generally – and in particular how special masters evaluate the proper hourly rate. *See, e.g., Auch v. Sec'y of Health & Human Servs.*, No. 12-673V, 2016 WL 3944701, at *9-13 (Fed. Cl. Spec. Mstr. May 20, 2016). Such standards were also addressed in my withdrawn First Decision, and will not be repeated herein.

Nevertheless, Petitioner's request that I find the Maglio Firm's Sarasota local rates to be equivalent to rates charged in the Court's forum merits brief consideration of the intent and meaning of the *Davis* exception as embraced by the Federal Circuit in *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343 (Fed. Cir. 2008), and its application in the Program. Before *Avera*, the practice in the Program was to award fees based on the locality of the attorney's practice. *Id.* at 1348. There were, however, many circumstances where petitioners attempted to obtain higher fees awards, often by noting the fees paid to counsel in Washington, D.C. district court cases involving federal fee-shifting statutes under the "*Laffey* matrix," a rate schedule established for that purpose. *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381 (Fed. Cir. 2011).

Efforts to obtain *Laffey* matrix rates for Vaccine Program cases were uniformly unsuccessful. *English v. Sec'y of Health & Human Servs.,* No. 01-61V, 2006 WL 3419805, at *7 (Fed. Cl. Spec. Mstr. Nov. 9, 2006). In denying such requests, special masters observed that the *Laffey* matrix only provided guidance for non-Program matters, since it applied to complex litigation; Program cases, by contrast, did not require use of the federal rules of evidence or the taking of discovery, and were tried without the constraints of the Federal Rules of Civil Procedure. *Rodriguez,* 515 F.3d at 1384. Moreover, special masters pointed out that, in keeping with Federal Circuit pronouncements on the matter, Program attorney compensation could not be based on the concept that the nationwide, single-practice character of Program litigation favored a single rate for all Vaccine Act counsel. *English*, 2006 WL 3419805, at *8-9.

*Avera* introduced the rule that attorneys practicing outside of D.C., but where rates were consistent with that of the forum, should receive the higher forum rate, unless the local rate was sufficiently lower. *Avera*, 515 F.3d at 1349. *Avera* did not, however, establish a bright-line rule for determining when local rates were sufficiently different to trigger the exception. Subsequent Federal Circuit discussions of *Avera* have embraced inclusion of the *Davis* exception, but endorsed *Avera's* reluctance to firmly define what is "very significantly different." *See, e.g., Hall v. Sec'y of Health and Human Servs.,* 640 F.3d 1351,1357 (Fed. Cir. 2011). Thus, although in *Hall* the special master's original decision that had been appealed engaged in a differential comparison[4] in order to evaluate the extent of the rate gap (No. 02–1052V, 2009 WL 3423036, at *20–21 (Fed.C1.Spec.Mstr. Oct. 6, 2009)), the Federal Circuit emphasized that at bottom special masters must consider "the evidence before them and their own trial experience in similar litigations" in deciding if the *Davis* exception should be applied. *Hall,* 640 F.3d at 1357.[5]

Another point relevant to the analysis herein is the underlying policy goal animating the *Davis* exception. As the Federal Circuit stated in *Avera*, the intent of an exception to awarding a single, forum-based rate in all Program cases is to ensure against a "windfall" – meaning paying a lawyer in a rural or less expensive locale more than she would otherwise earn, simply because she is litigating a case in a court of national jurisdiction. *Avera,* 515 F.3d at1349. Implicit to this is the fact that it is less expensive to practice law in some parts of the United States than others, given prevailing office overhead costs as well as the market for attorney services. *Id.* at 1348. Paying a Program lawyer more than he or she would ordinarily earn for comparable work is not reasonable. *See, e.g., Rodriguez,* 632 F.3d at 1385 (the Act's fee provision is "not designed as a form of economic relief to improve the financial lot of lawyers") (*citing City of Burlington v. Dague*, 505 U.S. 557, 563 (1992)).

The generosity of the Act's fees provision also factors in to what a Program attorney should receive generally. Many federal fee-shifting statutes allow a fees award only when a claimant has succeeded. The Vaccine Program, by contrast, pays petitioner's counsel win or lose (except when a case should not have been brought at all under the "reasonable basis" standard – an exception not frequently triggered), and even permits interim payments, before an entitlement decision has issued. Because Program practitioners enjoy compensation protection not available elsewhere, attorneys who accept representation of a Vaccine Act petitioner bear far less risk – and it is therefore reasonable

---

[4] The *Davis* exception formula to determine the difference between the local and forum rates has been calculated as follows: [(forum rate – local rate) / local rate] x 100. *Barrett v. Sec'y of Health & Human Servs.,* No. 09-389V, 2014 WL 2505689, at *12 (Fed. Cl. Spec. Mstr. May 13, 2014).

[5] Although decisions of special masters, and in the Court of Federal Claims, have often attempted to adopt a mathematical formula for determining if a local rate is "very significantly different" from the forum rate, D.C. district court cases discussing *Davis* have tended to take the more common-sense view that its application should mainly be a function of whether the non-forum location is "less expensive" in terms of attorney costs, regardless of degree. *Avera,* 515 F.3d at 1349; *see also Sierra Club v. Jackson*, 926 F. Supp. 2d 341 (D. D.C. 2013); *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 24 (D. D.C. 2013)(noting an "exception where lawyers practice in far less expensive legal markets"); *Rocky Mountain Clean Air Action v. Johnson,* No. 06-1992, 2008 WL 1885333, at *2 (D. D.C. Jan. 28, 2008).

(especially since they are paid from a public fund) that they should not receive the same amounts as other attorneys pursuing claims under federal statutes. This is especially so for attorneys who literally do not practice in the forum or its equivalent.

Finally, and as alluded to above, the nature of the work performed in vaccine cases is a relevant factor. The Federal Circuit has repeatedly observed that Program work cannot be compared with other kinds of federal litigation, given the more relaxed nature of Program cases. *Rodriguez,* 632 F.3d at 1384. This factor suggests not only that vaccine work should be reimbursed at a lower market rate generally, but also that in determining whether the *Davis* exception applies, it is critical that counsel demonstrate that a purported "local" rate reflects comparable work, rather than more complex litigation.

## II. The Maglio Firm Should Receive Forum Rates for its Sarasota-based Counsel.

With all of the above in mind, I turn to Petitioner's argument on reconsideration. Petitioner requests that I award Mr. Caldwell $356 per hour for work performed in 2016, rather than the $335 per hour in the First Decision. I arrived at this figure based upon my finding that the Maglio Firm's Sarasota office falls into the *Davis* exception (although I did adjust Mr. Caldwell's rate upward from $300 to account for inflation). *See* First Decision. Petitioner now offers a passel of attorney declarations and affidavits aimed at demonstrating that in fact its local Sarasota rates are not "very significantly different" from the rates recently set for forum attorneys in *McCulloch. See* Ex. 37 to Mot.

The evidence offered relevant to Mr. Caldwell (attorneys with 20 to 30 years of experience) sets forth a local rate range of $350 an hour to $425 an hour – mostly congruent with the *McCulloch* ranges. I note, however, the generally-observed point other special masters have emphasized: attorneys have a natural interest in obtaining the highest payment possible, for themselves and their professional colleagues. *Masias v. Sec'y of Health & Human Servs.,* No. 99-697, 2009 WL 1838979, at *27 (Fed. Cl. Spec. Mstr. Jun. 12, 2009) (attorney affidavits should be "evaluated with a grain of salt"), *aff'd and rehearing den'd en banc,* 634 F.3d 1283 (Fed. Cir. 2011). As a result, while the offered declarations and affidavits have some evidentiary value, they do not constitute the most trustworthy evidence possible, given their inherently subjective nature.

Better would be objective proof reflecting independently-collected evidence of rates, or information about costs in the relevant area. Here, such evidence has not been offered, even though other decisions (*McCulloch* in particular) found such information extremely probative. Nevertheless, and in keeping with my inquisitorial role in deciding the matters before me, I have conducted my own review of a sampling of federal fees decisions from the Middle District of Florida (the relevant region for purposes of evaluating Sarasota rates) suggesting a wide variety of rates, depending on the nature of work performed. Notably, there are many federal cases awarding fees under the Fair Debt

Collection Practices Act (the "FDCPA") – a statute involving claims that have been deemed routine and straightforward. *Selby v. Christian Nicholas & Associates*, No. 309–cv121–J–34JRK, 2010 WL 745748 at*5 (M.D. Fla. Feb. 26, 2010). As the chart below illustrates, rates in those cases range from $200 per hour to $394 per hour depending on the attorney's experience:

| Case Name | Claim Type | Rate | Atty's Experience |
|---|---|---|---|
| *Amaro v. Specialized Loan Servicing, LLC*, 8:10-CV-1729, 2011 WL 6181918 (M.D. Fla. Dec. 13, 2011) | FDCPA* | $350/hr | 23 years |
| *Selby*, 2010 WL 745748 at *5 | FDCPA | $200/hr | All Attorneys |
| *Thomas v. Arm WNY*, No.3:14-CV-360-J-39MCR, 2014 WL 6871654 (M.D. Fla. Dec. 3, 2014) | FDCPA | $200-$250/hour | 2-5 years |
| *Stone v. Nat.'l Enterprise Systems*, No.6:08-cv-1523-Orl-22GJK, 2009 WL 3336073 (M.D. Fla. Oct. 15, 2009) | FDCPA | $225-254, $300, $394/hour | 2-6, 7-8, 13-15 years |
| *Myrick v. Distribution & Acquisition Network*, No. 8:09-CV-1391-T-33TBM, 2010 WL 2179112 (M.D. Fla. April 28, 2010) | FDCPA | $200-$300/hour | All Attorneys |
| *Zachloul v. Fair Debt Collections and Outsourcing,* No. 8:09–CV–128–T–27MAP, 2010 WL 1730789 (M.D.Fla. March 19, 2010) | FDCPA | $300/hour | 16+ years |
| *Holland v. Gee*, No.8:08-CV-2458-T-33AEP, 2012 WL 5845010 (M.D. Fla. Oct. 23, 2012) | FCRA* | $350, $175/hour | 14 years, 4 years |
| *Butdorf v. SC Maintenance, Inc.*, No.8:15-CV-916-T-23TGW, 2015 WL 9694516 ( M.D. Fla. Dec. 7, 2015) | FLSA* | $350/hour | 10 years |
| *Fair Debt Collection Practices Act (FDCPA), Fair Credit Reporting Act (FCRA), Fair Labor Standards Act (FLSA) | | | |

The decisions of prior special masters present little guidance on whether the Maglio Firm's Florida office should receive forum rates. The vast majority of the fees motions filed by Maglio Firm petitioners in the past have been resolved by stipulation or settlement. And (as my First Decision noted) where the issue was disputed in the past, the Maglio Firm was awarded the local rate – although such cases do not shed significant light of how the question should be resolved. *O'Neill v. Sec'y of Health & Human Servs.,* No. 08-243V, 2015 WL 2399211 (Fed. Cl. Spec. Mstr. Apr. 28, 2015).[6] Thus, in *O'Neill,* Special Master Hamilton-Fieldman awarded the local rate because it was requested

---

[6] In requesting reconsideration, Petitioner also suggests that my own decision in *Scharfengerger v. Sec'y of HHS,* No. 11–221V, 2015 WL 3526559, at *10 (Fed. Cl. Spec. Mstr. May 15, 2015) does not itself support the conclusion that the Maglio Firm's Sarasota office is out-of-forum. Mot. at 5. Petitioner is literally correct – *Scharfenberger* dealt with determining the proper rate for a Maglio Firm attorney who practices out of its DC office, and therefore did not determine proper Maglio Firm rates for its Sarasota-based lawyers. However, *Scharfenberger* referenced some of the decisions in which the Sarasota office was deemed out-of-forum. *Scharfenberger*, 2015 WL 3526559, at *8. It also reasonably considered the rates paid to the more experienced attorneys in its Florida location in order to draw conclusions about what fairly should be paid a less-experienced attorney who happened to be in the more expensive location. *Id*. This is a product of the fact – unique in the Program – that the Maglio firm has a DC satellite office, in addition to its primary location in Sarasota.

by the Maglio Firm, while finding that the local rate was in fact appropriate.

After consideration of all evidence filed on this matter as well as the aforementioned law and facts, I now conclude that the difference between the local rates in Sarasota awarded in similar circumstances and the forum rates are insufficiently different for someone of Mr. Caldwell's vintage to apply the *Davis* exception. The low-end forum rate for an attorney with comparable experience (20+ years of practice) is $350 per hour. *McCulloch,* 2015 WL 5634323, at * 19. That amount is not significantly different from what a Florida attorney in the Tampa-Sarasota area would be paid for comparable work under a federal fee-shifting statute like the FDCPA. This is true whether or not I accept the *Hall/McCulloch* formulation of "very significantly different."[7] Mr. Caldwell will therefore receive the requested $356 per hour for 2016.[8]

In ruling as I do, I acknowledge the disparity between the decisions of prior special masters (which uniformly found Sarasota to be a non-forum region) and this one. Although I am not formally bound by other special masters' determinations, I still hesitate to act contrary to prior conclusions on this subject. It appears, however, that the disparity may be attributable to a confluence of factors and circumstances different from what attorneys obtained in the Program even five years ago. The rates paid to Vaccine Program counsel may well have been held down for the past several years, whether due to slow economic growth generally or informal compensation/rate agreements struck between frequent Program counsel and the Department of Justice that have now been deemed (not surprisingly, by the petitioners' bar) stale.[9] At the same time, *McCulloch* may have lowered the ceiling on what constitutes a forum rate. *See, e.g., Garrison v. Sec'y of Health & Human Servs.*, No. 14-762V, 2016 WL 3022076 (Fed. Cl. Spec. Mstr. Apr. 29, 2016), *mot. for review den'd*, 2016 WL 4784054 (Fed. Cl. Aug. 17, 2016) (Idaho-based attorney entitled to forum hourly rate). *McCulloch* itself accepts the premise that Program attorneys do not receive the same hourly rate that they would from more complex litigation, and attempted to set a reasonable forum rate in light of such constraints, even

---

[7] In fact (and consistent with the lack of a bright-line rule for how a special master should determine if forum and non-forum rates are sufficiently different), I do not find that the *Hall* rate differential calculation approach always embodies the best test for when to apply the *Davis* exception - although other special masters have reasonably embraced it as consistent with *Avera. See, e.g., Garrison v. Sec'y of Health & Human Servs.,* No. 14-762V, 2016 WL 3022076, at *7 (Fed. Cl. Spec. Mstr. Apr. 29, 2016).

[8] Although Respondent did not substantively object to Petitioner's request for reconsideration, and although I deemed it in the interests of justice to take a second look at my First Decision (given the benefits to be derived from resolving the entitlement of the Maglio Firm's Sarasota office to forum rates), I note that reconsideration under Vaccine Rule 10(e) should not be viewed by petitioners or their counsel as an opportunity to make new arguments not previously addressed – or, in the context of fees requests, to dicker over a special master's calculations. This is especially so where the results of reconsideration will not appreciably alter my original determination; here, for example, reconsideration is leading to an increase of less than $100 to the total sum originally awarded. I will therefore not make it a practice to use the vehicle of reconsideration under such circumstances, and petitioners and their counsel should not expect otherwise.

[9] Indeed, it was the collapse of such an agreement that led to the *McCulloch* decision in the first place. *McCulloch,* 2015 WL 5634323, at *19.

though it would be a lower rate. *McCulloch,* 2015 WL 5634323, at *18-19.

Given the above, more and more Program lawyers formerly viewed as out of the forum, given their literal geographic location, may now be able to succeed in establishing an entitlement to forum rates. There nevertheless remain common-sense limits to what a lawyer who does not otherwise practice in the equivalent of the D.C. forum should receive for an hour's work on a Vaccine matter. *Avera*, with its embrace of the *Davis* exception, remains controlling law – and counsel should not expect to evade it by engaging in clever mathematical exercises intended to "beat the spread" between local and forum rates.

**III.    Merits of Remaining Arguments on Reconsideration.**

Besides arguing for forum rates, Petitioner also addresses six additional points in his Motion for Reconsideration – although these points do not contest the remaining aspects of my prior decision, such as expert costs, and therefore those elements as determined in the First Decision will be deemed unopposed. In addition, most of Petitioner's points relate simply to factual assertions or findings that Petitioner disputes, but which substantively do not bear directly on the outcome herein.[10]

This leaves only one additional point for reconsideration (other than Mr. Caldwell's rate). *See* Mot. at 7-8 (Point #5). In the First Decision, I cut in half the 17.2 hours Petitioner's counsel spent working with Dr. Steinman on his expert report, finding that this was excessive in light of Dr. Steinman's own high billing rate (which greatly exceeds what Petitioner's counsel is receiving) and the needs of this case. *See* First Decision. Petitioner now argues that this amount of work was reasonable, and that in fact there were cost savings achieved by devoting such time to the expert report. Mot. at 8.

Petitioner's arguments are unpersuasive. Although I am largely giving Petitioner all of the attorney time requested, the fact this case was a flu-GBS case, and hence a common Program claim, and that the matter settled without hearing, bear on how much work really needed to be put into the

---

[10] For example, in an effort to rebut the observation in the First Decision that counsel did not appear to have performed any work on the matter prior to its filing, Petitioner argues that the attorney invoices connected with the matter do not reveal work that was in fact performed by Maglio Firm attorneys on the case. Motion at 6 (Point #1). It is of course admirable for Program lawyers to request compensation only for work they deem fair – but the fact that an invoice does not include requested time does not permit me to speculate as to how much time was devoted to the matter but deducted before filing a fees request. This argument would have more heft if the invoice supporting the fees request detailed work that Petitioner was not including in his fees request.

Petitioner's argument about the validity of using the consumer price index rate of inflation as a modifier (Point #3) is similarly irrelevant herein, since the grounds for reconsideration turn only on the proper rate for the present year – not a prior year that had to be inflated up or down.

expert report. I also note (based on my experience with Program matters) that Dr. Steinman often submits expert reports that appear more the product of cutting and pasting of information from other sources into an electronic document, rather than an originally produced piece of writing. This report, as with others filed in cases assigned to me, does not appear to have been edited by counsel in any way that would make it more legible or useful. *See generally* Pet.r's Ex. 15. Under such circumstances, a 50 percent reduction was wholly warranted.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Based on the reasonableness of Petitioner's request, as well as my reductions and hourly fee rate decisions set forth above, on reconsideration I hereby GRANT in part Petitioner's Motion for attorney's fees and costs, awarding Petitioner the $356 hourly rate for work performed by Mr. Caldwell in 2016, but otherwise DENY the motion leaving intact the fees and costs determinations of my First decision. This results in a revised total award as follows:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Caldwell's Fees | $36,850.40 | $4,665.00 | $32,185.40 |
| Maglio Firm Costs[11] | $3,103.05 | none | $3,103.05 |
| Dr. Steinman's Fees | $8,375.00 | $375.00 | $8,000.00 |
| Paralegal Costs | $5,654.50 | $348.00 | $5,306.50 |

Accordingly, I award a total of **$48,594.95** as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, Franklin J. Caldwell, Jr., Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[12]

---

[11] In accordance with General Order No. 9, Petitioner's counsel has represented that Mr. Dezern separately incurred no reimbursable costs in proceeding with this petition. Ex. 36 (ECF No. 48-4). Accordingly, costs paid herein include no separate costs payable to Mr. Dezern.

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master